UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JESSICA RAE PLEASANT, ) ) **Plaintiff.** ) ) v. ) ) ARTS AND HUMANITIES COUNCIL ) OF TULSA, INC. d/b/a AHHA TULSA,[1] ) ) **Defendant.** ) | Case No. 23-CV-37-TCK-JFJ |

## OPINION AND ORDER

The Court has for its consideration plaintiff Jessica Rae Pleasant's (Plaintiff) request for permission to file electronically (Doc. 10) and motion for default judgment (Docs. 19, 21).[2] Also before the Court is the partial motion to dismiss filed by defendant Arts and Humanities Council

---

[1] The caption of the petition filed in state court names Defendant as AHHA Tulsa (Arts and Humanities Council of Tulsa Hardesty Arts Center). However, Defendant states that is incorrect and that the correct name is Arts and Humanities Council of Tulsa, Inc. d/b/a AHHA Tulsa. (Doc. 2 at 1). Accordingly, the Clerk of the Court is directed to change the name of the Defendant to its correct name, as provided in the above caption, and the parties are directed to provide the correct name of Defendant in all future captions in this case.

[2] On February 6, 2023, Defendant filed a motion for extension of time to answer the initial pleading, noting Plaintiff's objection, (Doc. 7), and for good cause shown and before Defendant's deadline to answer had lapsed, this Court granted Defendant's motion by minute order on February 8, 2023, (Doc. 9). Two weeks later, on February 22, 2023, Plaintiff filed a document that combined her objection to Defendant's request for additional time to plead and her request for default judgment. That document was initially assigned only one number on the docket, Doc. 12, because it improperly combined a motion with a response. *See* LCvR 7-1(b). However, because the request for default judgment is in fact a separate event from the response to Defendant's extension of time, the Court later assigned the document a second number on the docket, with the motion for default being numbered Doc. 19. Complicating matters further, Plaintiff's motion for default (Doc. 19) appeared to have been filed without exhibits referenced in the motion, and on March 8, 2023— without explanation or request for leave to amend—the same document was filed with the exhibits attached, which the Court construed as an amended motion for default. (Doc. 21). Thus, Plaintiff's motion for default has two separate document numbers on the docket. For purposes of this opinion and order, the Court will cite to the amended motion only (Doc. 21) but will assume that the amended motion was filed on February 22, 2023.

of Tulsa, Inc. d/b/a AHHA Tulsa (Defendant or AHHA). (Doc. 13). The parties have responded to each of the pending motions. (Docs. 12, 17, 22, 23).[3] For the reasons set forth below, Plaintiff's motions to file electronically (Doc. 10) and for default judgment (Docs. 19, 21) are **DENIED**, and Defendant's partial motion to dismiss (Doc. 13) is **GRANTED**.

## I. BACKGROUND

According to the complaint,[4] Plaintiff, an African American woman of relatively short height[5] with gallbladder disease and "female reproductive issues," was hired by Defendant on February 14, 2022, for the position of Exhibitions and Facilities Manager. (Doc. 2-2 at ¶¶ 5, 11). Plaintiff's job responsibilities included soliciting artwork for exhibitions, overseeing art exhibitions, coordinating with the artists whose work was on display at the exhibition, and maintaining the Defendant's facilities. (Doc. 15-1 at 1).[6] Plaintiff was terminated from her employment with Defendant on March 15, 2022, which Plaintiff attributes to discrimination, sexual harassment, and retaliation. (Doc. 2-2 at ¶¶ 11-13). Specifically, the complaint alleges that

---

[3] The Court notes that Defendant filed a response to each of Plaintiff's motions for default judgment, and both of Defendant's responses appear to be identical. (Docs. 17, 22). For purposes of this opinion and order, the Court will cite to Doc. 22 only.

[4] Although Plaintiff's initial pleading filed in state court was originally styled as the petition, (Doc. 2-1 at 2), the Court will refer to that document as the complaint, in keeping with the title given to initial pleadings in federal court.

[5] Plaintiff states that her height is 4 feet, 11 inches. (Doc. 2-2 at ¶ 11).

[6] The Court notes that Plaintiff's job responsibilities were taken from Plaintiff's Charge of Discrimination (Charge) filed with the Oklahoma Office for Civil Rights Enforcement (OCRE) because they were not clearly outlined in the complaint. However, the Court may consider the Charge for purposes of this opinion and order because the complaint references the Charge and Plaintiff has not disputed its authenticity. *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005) (A court may consider a document other than the complaint at the motion to dismiss stage, when its authenticity is not in dispute, it is central to a plaintiff's claim, and it is referenced in the complaint.).

Defendant discriminated against Plaintiff due to her race, the color of her skin, her height,[7] her sex, and her disabilities. Further, Plaintiff claims that, during her employment with Defendant, she was subjected to multiple forms of sexual harassment on numerous occasions by her direct supervisor, Bracken Klar (Klar), who was the Director of Programs and Engagement. (*Id.* at ¶¶ 6, 12). Lastly, Plaintiff maintains that Defendant's retaliation took the form of terminating her employment based on reasons that "are rooted in the above-mentioned claims of discrimination and harassment." (*Id.* at ¶ 13).

On or about October 20, 2022, Plaintiff timely filed a Charge of Discrimination (Charge) with the Oklahoma Office of Civil Rights Enforcement (OCRE), alleging discrimination based on race, color, sex, disability, and sexual harassment. (Doc. 15-1 at 1). Notably, Plaintiff omitted "genetic information" and "retaliation" claims in her OCRE Charge. (*Id.*) On October 21, 2022, OCRE issued an Order of Dismissal, and on December 12, 2022, Plaintiff filed a complaint in the District Court of Tulsa County, Oklahoma, raising the above-mentioned claims of discrimination, harassment, and retaliation against Defendant as well as a claim for intentional infliction of emotional distress.[8] (Doc. 2-2 at ¶¶ 11-14).

---

[7] Plaintiff couches her claim of height discrimination as discrimination based on "genetic traits." (Docs. 2-2 at ¶ 11; 15-1 at 1). Discrimination on the basis of an individual's genetic information is prohibited by the Genetic Information and Non-Discrimination act of 2008 (GINA). 42 U.S.C. § 12101, *et seq*. The Oklahoma Anti-Discrimination Act (OADA) also prohibits discrimination based on a person's genetic information. Okla. Stat. tit. 25, § 1302(A). However, it appears that Plaintiff mistakenly conflates "genetic information," as contemplated under GINA and OADA, with a person's phenotypic traits, such as height. While Plaintiff almost certainly misapprehends the nature of genetic information with respect to discrimination claims, the Court need not analyze this issue for purposes of this opinion and order.

[8] While Plaintiff terms the last claim as the "[t]orte [of] extreme emotional distress," (Doc. 2-2 at ¶ 14), the Court construes this as the state-law tort of intentional infliction of emotional distress.

3

Defendant's registered agent, attorney Hugh M. Robert (Robert), was served with process on January 3, 2023, and on January 23, 2023, Robert filed a special entry of appearance and reservation of time to respond on behalf of Defendant, providing Defendant with an additional 20 days to answer or respond to the initial pleading pursuant to Okla. Stat. tit. 12, § 2012(A)(1)(b). (Docs. 2-1 at 4; 2-3). On February 3, 2023, Defendant's current counsel of record removed the case to this Court on the basis of federal question jurisdiction. (Doc. 2). After removal and before its deadline to answer the complaint, Defendant's counsel filed a contested motion for an extension of time to answer or otherwise respond to the pleading. (Doc. 8). On February 8, 2023, because Defendant had shown good cause for extending its time to respond, this Court granted Plaintiff's motion, extending the deadline to February 23, 2023. (Doc. 9).

On February 22, 2023, Plaintiff filed a motion for default judgment, arguing that Defendant's answer was due on January 23 and that Defendant had failed to file an answer before that date. (Doc. 21). To that end, Plaintiff requested a default judgment against Defendant in the amount of $5,000,000. (*Id.*) The following day, Defendant filed a partial motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, seeking to dismiss the following claims: (1) "genetic trait" discrimination; (2) disability discrimination; (3) retaliation; and (4) intentional infliction of emotional distress. (Doc. 13). The Court addresses each motion in turn.

## II.  LEGAL STANDARDS

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's . . . complaint alone is legally sufficient to state a claim upon which relief may be granted." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014) (internal citations omitted). A complaint is

legally sufficient only if it contains factual allegations such that it states a claim to relief that "is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 550. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 680.

As a general matter, default judgments are disfavored, *Katzson Bros., Inc. v. U.S. E.P.A.*, 839 F.2d 1396, 1399 (10th Cir. 1988), and "[t]he preferred disposition of any case is upon its merits and not by default judgment." *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970). Fed. R. Civ. P. 55 contemplates a two-step process. First, the plaintiff must apply to the clerk for entry of default, and upon a showing—by affidavit or otherwise—that the defendant has failed to plead or otherwise defend, the clerk must enter the party's default. Fed. R. Civ. P. 55(a). "Default may be entered under Rule 55(a) only where a party has failed to plead or otherwise defend." *Lariviere, Grubman & Payne, LLP v. Phillips*, 2008 WL 4097466, at *8 (D.Colo. Sept. 4, 2008). Second, if the clerk enters a default, then the plaintiff may file a motion for default judgment under Rule 55(b). When considering a motion for default judgment, the court is given wide discretion to grant or deny a default judgment motion. *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003).

In applying these standards, the Court is mindful that plaintiff proceeds pro se. While pro se pleadings must be liberally construed and held to less stringent standards than pleadings drafted

by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a district court should not assume the role of advocate. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Moreover, even pro se plaintiffs are required to comply with the "fundamental requirements of the Federal Rules of Civil . . . Procedure" and substantive law, and the liberal construction to be afforded does not transform "vague and conclusory arguments" into valid claims for relief. *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994).

### III. DISCUSSION

**A. PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

The Court can readily dispatch Plaintiff's motion for default judgment for several reasons. First among them, Plaintiff's motion for default judgment was filed without having first applied for an entry of default under Rule 55(a). Plaintiff's "*pro se* status does not excuse [her] obligation . . . to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure" *Ogden*, 32 F.3d at 455. Consequently, Plaintiff's motion for default judgment was premature and must be denied. *Christenson Media Grp., Inc. v. Lang Indus., Inc.*, 782 F. Supp. 2d 1213, 1223 (D. Kan. 2011).

Second, even if Plaintiff had made such a request for entry of default before filing her motion for default judgment, the record reflects that Defendant entered an appearance, and within 20 days of service, Defendant reserved an additional 20 days to respond as a matter of right under Oklahoma state law.[9] *See* Okla. Stat. tit, 12, § 2012(A)(1)(b). Before the additional 20 days had

---

[9] The Court notes that Defendant arguably waived its Rule 12(b)(6) defenses by filing a special entry of appearance and reservation of time to respond in the state court action. *See McBee v. Shanahan Home Design, LLC*, 499 P.3d 1, 4 n. 12 (Okla. 2021) (noting that, following 2002 statutory amendment, "*any reservation of time*" made under Okla. Stat. tit. 12, § 2012(A)(1)(a) ostensibly waives the enumerated defenses, among which includes failure to state a claim upon

lapsed, Defendant removed the case to this Court, and pursuant to Fed. R. Civ. P. 81(c)(2)(C), Defendant had seven days from the date of removal to answer or respond to the complaint. Lastly, before Defendant's Rule 81(c)(2)(C) deadline had passed, the Court extended the deadline to February 23, 2023. Defendant then filed its Rule 12 motion on February 23, thus obviating the need to file an answer until the Rule 12 motions are resolved. *See* Fed. R. Civ. P. 12(a)(4)(A). Because Defendant has adhered to the procedural rules and deadlines, it cannot be found in default. Accordingly, Plaintiff's motion for default judgment is **DENIED**.

**B. DEFENDANT'S PARTIAL MOTION TO DISMISS**

Defendant contends that four of Plaintiff's claims must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In particular, Defendant argues that two of Plaintiff's claims—namely, the genetic trait and retaliation claims—must be dismissed for failure to exhaust administrative remedies, and because more than 300 days have passed since the alleged discriminatory act, Plaintiff is now barred from raising those claims. Defendant next argues that the disability discrimination claim should be dismissed because, even accepting all of the factual allegations as true, Plaintiff is not entitled to relief for her menstrual cycle and gallbladder disease disability claims. Lastly, Defendant maintains that the intentional infliction of emotional distress (IIED) claim must be dismissed because Plaintiff has not pleaded facts sufficient to show that Defendant engaged in extreme or outrageous behavior.

---

which relief can be granted). However, Plaintiff did not raise the issue of waiver, and the Court declines to make that argument for her. *See Hall*, 935 F.2d at 1110 ("[W]e do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant."). Accordingly, Court will proceed to address the issues raised in Defendant's partial motion to dismiss.

### 1. Genetic Information and Retaliation Claims

"Title 42 U.S.C. § 2000e-5(e)(1) is a charge filing provision that 'specifies with precision' the prerequisites that a plaintiff must satisfy before filing suit." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)). Under the provision, an employee must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice giving rise to the charge when, as in the present case, the employee has initially instituted proceedings with a state agency. 42 U.S.C. § 2000e-5(e)(1). A plaintiff is ordinarily barred from raising claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue-letter." *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194 (10th Cir. 2004) (quotation marks omitted).

"It is for the district court to determine whether the plaintiff has complied with the regulatory requirements when the defendant raises the issue of failure to exhaust administrative remedies." *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1105-06 (10th Cir. 2002). While courts must liberally construe Equal Employment Opportunity Commission (EEOC) charges in determining whether remedies have been exhausted as to a particular claim, a court's inquiry "is limited to the scope of the administrative investigation that can reasonably be expected to follow from the discriminatory *acts* alleged in the administrative charge." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007). "In other words, the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim[.]" *Id.*

Here, Plaintiff's Charge specifies race, color, sex, national origin, and disability as the bases for her employment discrimination, leaving the boxes for retaliation and "genetic information" unchecked. Although it is not dispositive, Plaintiff's failure to check these boxes "certainly creates a presumption that she was not asserting claims represented by boxes not

8

checked." *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1260 (10th Cir. 1998). Plaintiff cannot overcome this presumption because her EEOC charge also fails to provide a narrative reasonably related to retaliation or discrimination on the basis of genetic information. To the contrary, her narrative concludes with three catchall statements about Plaintiff's belief regarding the alleged discrimination and sexual harassment, and not one of those statements includes any belief regarding discrimination based on Plaintiff's genetic information or Defendant retaliating against Plaintiff for engaging in a protected activity. (Doc. 15-1 at 3). In her response to Defendant's partial motion to dismiss, Plaintiff elaborates on the difficulty in dealing with the EEOC, particularly with the EEOC interview process. (Doc. 14 at 2). Notably, however, Plaintiff does not refute the fundamental premise of Defendant's argument, namely, that Plaintiff failed to include retaliation and genetic information in her Charge and is, therefore, barred from asserting those claims now—more than 300 days from the last alleged discriminatory act. Accordingly, Plaintiff's state-law and federal claims for retaliation and genetic information discrimination must be dismissed.[10]

---

[10] Defendant argues that Plaintiff's failure to exhaust administrative remedies is grounds for dismissal of her Oklahoma Anti-discrimination Act (OADA) claims under Rule 12(b)(1) because exhaustion of administrative remedies is a jurisdictional prerequisite for bringing an OADA claim. ((Doc. 13 at 12) (citing *Jenkins v. CACI Int'l Inc.*, 2021 WL 4887983, at *1 (W.D. Okla. Oct. 19, 2021)). For the purposes of federal claims, however, the Tenth Circuit has unequivocally stated that the filing of an EEOC charge is not a jurisdictional prerequisite to suit. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018). That said, "in most cases, including this one, th[e] distinction between a jurisdictional requirement and an affirmative defense is immaterial" because the issue has been properly presented for the Court to decide. *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018). To that end, because the Court finds that Plaintiff failed to exhaust her administrative remedies, Plaintiff's OADA retaliation and genetic information claims must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1), and Plaintiff's federal retaliation and genetic information discrimination claims must be dismissed for failure to state a claim under Rule 12(b)(6).

### 2. Disability Discrimination Claim

Plaintiff premises her disability discrimination claims on two alleged disabilities: (1) gallbladder disease, for which she allegedly requested a reasonable accommodation for her "work diet" that excludes certain foods, such as meat and gluten; and (2) "female reproductive health issues" (FRH)—ostensibly Plaintiff's menstrual cycle—for which Plaintiff allegedly "sought to use [paid time off] for self-care during her cycle." (Doc. 2-2 at ¶ 41). Plaintiff appears to be bringing her disability discrimination claims under the Oklahoma Anti-Discrimination Act (OADA),(Doc. 15-1 at 3); however, "[b]ecause the protections provided by [the OADA] are co-extensive with the protections provided by federal law under the ADA [Americans with Disabilities Act]," *Stanley v. White Swan, Inc.*, 2002 WL 32061753, *11 (W.D. Okla. Sep. 26, 2002), the Court will assume that Plaintiff brings her disability claims under both the ADA and OADA.

To maintain a claim for wrongful discharge under the ADA, a plaintiff must demonstrate (1) that she is a disabled person within the meaning of the ADA; (2) that she is able to perform the essential functions of the job with or without reasonable accommodation; and (3) that the employer terminated her because of her disability. *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1173 (10th Cir. 1996) (citing *White v. York Int'l Corp.*, 45 F.3d 357, 360–61 (10th Cir.1995).

As a preliminary matter, the Court notes that Plaintiff's gallbladder disease appears to be wholly unrelated to the alleged disability discrimination claim. Specifically, the complaint merely references that Plaintiff had gallbladder disease but makes no allegations that Plaintiff was denied reasonable accommodations for her gallbladder disease. (Doc. 2-2 at ¶¶ 11, 41). Rather, the gravamen of Plaintiff's disability discrimination claim is that she was fired for missing a meeting due to menstrual cycle issues. (*Id.* at ¶¶ 21, 41, 44). Consequently, Plaintiff is unable to establish

a prima facie disability discrimination claim based on her gallbladder disease because she has failed to plead any facts giving rise to a plausible inference that her termination was on account of that particular disease. *Lowe*, 87 F.3d at 1173. Thus, to the extent that the complaint states any disability discrimination claim, it is related solely to Plaintiff's female reproductive health issues.

Although it is doubtful that Plaintiff's menstruation meets the criteria for a "disability" under the ADA or OADA, the Court need not decide that issue because the fact that Plaintiff never informed Defendant of a menstrual-related disability is dispositive of Plaintiff's disability claim. In particular, the complaint alleges that, in an effort "to maintain discretion and privacy," Plaintiff concealed the fact that she had menstrual complications from her supervisor and, instead, informed him that she needed to leave work early merely because her "stomach [was] hurting." (*Id.* at ¶ 21). When Plaintiff left work that day, she allegedly missed a meeting, which Plaintiff maintains was a primary factor in her termination. (*Id.* at ¶¶ 21, 44). Though Plaintiff is correct that she "has every right to keep her cycle of menstruation, and its complications, private," that act of concealment sounds the passing bell of her disability discrimination claim.[11] *Ewing v. Doubletree DTWC, LLC*, 673 F. App'x 808, 812 (10th Cir. 2016) ("Clearly, if [the employer] had no

---

[11] Plaintiff states that, during her onboarding with Defendant, she completed a "declaration of disability" form for Defendant, and that Klar apparently lost or destroyed that form. (Doc. 2-2 at ¶ 41). From this, Plaintiff appears to argue that the Court should impute on Defendant responsibility for accommodating Plaintiff's alleged female reproductive health disability, simply because the onboarding documents no longer exist. (*Id.*) However, in that same paragraph, Plaintiff also asserts that the form provided by Defendant "did NOT list female reproductive health issues." (*Id.*) Plaintiff then states that she "declared *a* disability," requesting a "work diet" accommodation for her gallbladder disease. (*Id.*) (emphasis added). The only reasonable inference that can be drawn from these facts is that Plaintiff's declaration of disability informed Defendant of her gallbladder disease only and made no reference to complications from her menstrual cycle. Consequently, the fact that Klar lost or destroyed Plaintiff's declaration of disability form does not change the calculus for determining whether Defendant was aware of Plaintiff's alleged menstruation-related disability. To that end, the Court declines to follow Plaintiff's suggestion that Defendant should be responsible for accommodating an alleged disability of which it was never aware.

knowledge of [plaintiff's] disability, [p]laintiff cannot establish that her termination arose under circumstances which would give rise to an inference that it was based on her disability."). Thus, even assuming that Plaintiff's menstruation constitutes a disability under the ADA, her claim nevertheless fails because the facts allege that Defendant was never made aware of a disability related to her menstrual cycle.

Accepting Plaintiff's factual allegations as true and granting all reasonable inferences, the Court finds that Plaintiff has not pleaded facts that give rise to a plausible disability discrimination claim under the ADA. Further, because Plaintiff's ADA claim fails, her OADA claim must also fail. *McCully v. Am. Airlines, Inc.*, 695 F. Supp. 2d 1225, 1246 (N.D. Okla. 2010), *aff'd*, 406 Fed. App'x. 260 (10th Cir. 2010). Accordingly, Plaintiff's disability discrimination claim must be dismissed.

### 3. IIED Claim

In the context of employment, offensive conduct ordinarily does not rise to the level of extreme and outrageous for the purposes of the IIED tort. *See Gabler v. Holder & Smith, Inc.*, 11 P.3d 1269, 1280 (Okla. Civ. App. 2000) ("[Oklahoma] appellate courts have consistently found employment related facts . . . do not meet the [extreme and outrageous conduct] criteria."); *Mirzaie v. Smith Cogeneration, Inc.*, 962 P.2d 678 (Okla. Civ. App. 1998) (conduct that included an employer calling the plaintiff in the middle of the night, requiring her to do unnecessary work, and making derogatory sexual comments about the plaintiff's fiancée was not extreme and outrageous for purposes of IIED tort); *Herron v. Watson's of Okla. City Inc.*, 2020 WL 3086256, at *3 (W.D. Okla. June 10, 2020) (allegations of defendant unzipping pants while making eye contact with plaintiff, throwing a 15-pound swing at plaintiff while directing derogatory racial and sexual comments, and sending plaintiff middle finger emoji, "describe inappropriate workplace

harassment that can support a Title VII or OADA claim, but they are not sufficiently outrageous to clear the exceptionally high bar for an IIED claim.").

Here, Plaintiff alleges, in relevant part, that Klar sent texts to Plaintiff from a burner phone after workhours and about topics unrelated to work; attempted to invite himself over to Plaintiff's house; held a private meeting with Plaintiff and lifted his crotch toward Plaintiff while maintaining eye contact with Plaintiff; took Plaintiff on private lunches; repeatedly bullied Plaintiff; and used Plaintiff's race as a token of racial diversity for public events, while foisting the menial labor for the events onto Plaintiff. (Doc. 2-2 at ¶¶ 33-34, 35, 39, 40). While not a complete survey, the above factual allegations generally describe the type of conduct at issue in the complaint. Viewed in a light most favorably to Plaintiff, the Court has no doubt that Plaintiff was deeply distressed by the events that related to her employment with Defendant; however, when juxtaposed to the above-cited cases in which the IIED claims were dismissed, this case does not represent an outlier warranting departure from the rule that workplace misconduct is generally insufficient to state an IIED claim under Oklahoma law. Thus, accepting all of the Plaintiff's allegations as true and granting all reasonable inferences, the Court finds that the facts alleged in the complaint are insufficient to support an IIED claim as a matter of law, and Plaintiff's IIED claim must be dismissed.

For the reasons outlined above, the Court finds that the complaint has failed to state a claim upon which relief can be granted with respect to Plaintiff's genetic information and disability discrimination claims, retaliation claim, and IIED claim. Accordingly, Defendant's partial motion to dismiss is **GRANTED**, and the above-referenced claims are dismissed.

**C. PLAINTIFF'S MOTION FOR PERMISSION TO FILE ELECTRONICALLY**

Plaintiff requests this Court to grant her permission to file documents electronically through the Case Management/Electronic Case File (CM/ECF) system. (Doc. 10 at 1). Local Rule LGnR2-1(a) provides in pertinent part that "[p]ro se parties must not file electronically unless authorized by the Court." This Court's CM/ECF Administrative Guide further underscores the rule, stating that pro se litigants will not be authorized to file electronically "[a]s a matter of routine practice."

Plaintiff supports her motion by affirming that she has reviewed and agreed to abide by the CM/ECF rules; that once permitted to file electronically, she will receive document by email only; that she must file all documents electronically; that she must convert CM/ECF documents to the proper electronic document format; that she has access to the technology and internet to file documents in the proper electronic format; that she will be required to review the docket sheet regularly; and that her permission may be revoked. (*Id.* at 1-2). Plaintiff's affirmation is belied by the fact that, after having verified her review of the filing rules, Plaintiff filed two multiple-event documents with improper formatting that conform neither to the Local Rules nor to the CM/ECF Administrative Guide. That can be forgiven under most circumstances, and the Court does not find that to be a sufficient reason to deny Plaintiff the privilege of filing electronically. What is more troubling to the Court, however, is the vexatiousness of Plaintiff's filings, as well as Plaintiff's abusive and obstreperous conduct toward others involved this case, particularly those who are merely doing their jobs, such as attorneys and court staff. The Court notes that, in the two months since removal, Plaintiff appears to have raised groundless objections to even the most anodyne scheduling and procedural requests.

By way of example, Defendant sought to supplement its partial motion to dismiss with a complete copy of Plaintiff's Charge, since that document was not available when Defendant filed its partial motion to dismiss. (Doc. 15). Plaintiff objected, raising no issue with the document's authenticity or the propriety of supplementing the motion with the particular document; rather, Plaintiff objected because "[y]ou are disgusting pigs in the mud. I'm not here to roll in filth with you on the wrong side of history," (Doc. 15-2 at 1). Apparently not content to leave well enough alone, Plaintiff later sent a second and third email to Defendant's counsel, stating in part:

> . . . You all are sacks of s[**]t for doing this to me and you will go to hell for it. Your legacy is a document filled with lies. See you in court, pigs! Here is a photo of the 'art' at that shack of a building I was tasked with managing. **Imagine going to law school for 8 years to defend a bunch of ugly-as-s[**]t clowns and a paper tube with screws sticking out of it leaning on the ground cause the hot glue came apart. And, tell that b[***]ch Hugh Robert to stop stalking me online since pig Katie wants to suffocate my freedom of speech on behalf of Ahha.**
>
> P.S. Don't worry stupid Katie, I won't allegedly speak to 'former staff' on internet platforms that are not your business, I'm serving them each with a lawsuit and hiring a lawyer to deal with y'all! Someone who is used to fighting in the mud with trash.

(*Id.*) The Court also notes that this correspondence occurred before Plaintiff filed her amended motion for default (Doc. 21) against that very same defendant. Suffice to say, this is not the only example of Plaintiff's obstreperous and vexatious conduct. While it is to be expected that pro se filings place additional administrative burdens on the Court, the Court will not tolerate the type of conduct Plaintiff has exhibited in the litigation thus far.

Electronic filing is a privilege for attorneys practicing in this Court, and along with that privilege is the expectation that they comport themselves in a professional manner, *see, e.g.,* LGnR3, LGnR4-6, in addition to complying with the guidelines for electronic filing set forth in the CM/ECF Administrative Guidelines. It should go without saying, but in case it is not clear to Plaintiff, Local Rules for appropriate and professional conduct should apply no less to pro se

litigants than they do to attorneys. The Court is mindful that Plaintiff may well be aggrieved by Defendant's actions giving rise to this case, but that does not excuse Plaintiff's conduct—especially toward those whose only stake in this matter is the orderly resolution of the case. In short, the Court will not reward Plaintiff's conduct, and thus, Plaintiff's motion for permission to file electronically (Doc. 10) is **DENIED**.

The Court further admonishes Plaintiff that "[t]he right of access to the courts is neither absolute nor unconditional, and there is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious." *Winslow v. Hunter* (*In re Winslow*), 17 F.3d 314, 315 (10th Cir. 1994). Courts have the inherent power to regulate and curtail vexatious and groundless litigation. *Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986). The Court directs Plaintiff to familiarize herself with the Local Rules regarding proper conduct and specifically Local Rules LGnR3 and LGnR4-6. As long as Plaintiff remains pro se, the Court further directs Plaintiff to adhere to applicable rules of conduct for attorneys under LGnR3 when litigating this case. Although the Court declines to impose filing restrictions here, Plaintiff is warned that her failure to comply with this order may result in filing restrictions or, on motion by Defendant, involuntary dismissal of the case under Fed. R. Civ. P. 41(b).

### IV. CONCLUSION

Because Plaintiff filed her motion for default judgment without having first applied for an entry of default under Rule 55(a), Plaintiff's motion for default judgment (Docs. 19, 21) is **DENIED**. Further, for the reasons outlined above, Defendant's partial motion to dismiss (Doc. 13) is **GRANTED**. Accordingly, Plaintiff's claims against Defendant for retaliation, genetic information discrimination, disability discrimination, and IIED are dismissed. Finally, Plaintiff's motion for permission to file electronically (Doc. 10) is **DENIED**, and Plaintiff is warned that her

continued obstreperous, abusive, and vexatious conduct in this litigation may result in filing restrictions or involuntary dismissal under Rule 41(b).

**SO ORDERED** this 31st day of March 2023.

TERENCE C. KERN
United States District Judge